E-FILED
Tuesday, 15 November, 2022  11:06:59 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS**

| | |
|---|---|
| LATOSHA BOWLIN, NICOLE POTTHAST, AMANDA KATE HUMPHREYS,     Plaintiffs, | ) ) ) ) |
| VS. | ) )   Case No. 22_____ |
| BOARD OF DIRECTORS OF JUDAH CHRISTIAN SCHOOL, BOARD OF EDUCATION OF STAUNTON CUSD #6, BOARD OF EDUCATION OF NORTH MAC CUSD #34,     Defendants. | ) ) ) ) ) ) ) ) |

**VERIFIED COMPLAINT
FOR DECLARATORY RELIEF AND DAMAGES**

COME NOW Plaintiffs, LATOSHA BOWLIN, NICOLE POTTHAST, and AMANDA KATE HUMPHREYS, by and through their attorney, Bethany D. Hager, Esq., pursuant to Fed. Rule Civ. Proc. 81(c)(1) and Fed. Rule Civ. Proc. 15(a)(1), (2), and for their Verified Complaint for Declaratory Relief and Damages against Defendants, BOARD OF DIRECTORS OF JUDAH CHRISTIAN SCHOOL ("Judah"), BOARD OF EDUCATION OF STAUNTON CUSD #6 ("Staunton"), and BOARD OF EDUCATION OF NORTH MAC CUSD #34 ("North Mac"), allege as follows:

**PARTIES**

1.    Plaintiffs are adult individuals who, at all relevant times herein, were employed, as teacher or staff, in Illinois elementary- or secondary- grade schools.

2.    Defendant Board of Directors of Judah Christian School ("Judah") operate a school in Champaign, Illinois, and was the employer of Plaintiff Latosha Bowlin at all relevant times

herein.

3.      Defendants BOARD OF EDUCATION OF STAUNTON CUSD #6 ("Staunton"),

and BOARD OF EDUCATION OF NORTH MAC CUSD #34 ("North Mac"), at all relevant times

herein, were the employers of Plaintiffs Nicole Potthast, and Amanda Kate Humphreys,

respectively.

4.      Plaintiffs have sustained substantial change to the terms of their employment,

including prolonged unpaid suspension or termination of employment, solely due to not agreeing

to unlawful disease mitigation measures, including unlawful quarantine requirements and

requirements that Plaintiffs be vaccinated or submit to testing for Covid-19.

**FACTUAL BASIS**

5.      On or about September 3, 2021, Illinois Governor Jay R. Pritzker issued an

Executive Order stating that individuals employed as teachers or staff in Illinois public schools or

institutions of higher education would be required to receive the first shot of a two-shot vaccine

for Covid-19, or one shot of a one-shot vaccine for Covid-19, by September 27, 2021, or be

excluded from their places of employment. (See Exhibit A)

6.      On or about September 3, 2021, the Illinois State Board of Education ("ISBE") and

the Illinois Department of Public Health ("IDPH") issued joint guidance stating that individuals

employed as teachers or staff in Illinois public schools or institutions of higher education must

receive the first shot of a two-shot vaccine for Covid-19, or one shot of a one-shot vaccine for

Covid-19, by September 27, 2021, or be excluded from their places of employment. (See Exhibit

B)

7.      On or about September 17, 2021, IDPH issued "emergency rules," modifying the

definition of "quarantine" in the Illinois Administrative Code so as to render the governor's

Executive Order and the joint guidance of ISBE and IDPH legally effective.

8.    The emergency rules were later found to be null and void. *See*, *Austin v. Pritzker*, Sangamon County 21-CH-500006, February 4, 2022 Decision and Order of Judge Grischow, *affirmed*, Fourth District Appellate Court No. 4-22- (February 17, 2022), *lv to appeal denied*, Illinois Supreme Court No. 128205 (See, collectively, Exhibit C).

9.    Employees, including Plaintiffs, who refuses to receive a Covid-19 vaccination were excluded from their places of employment and placed on unpaid leave, beginning September 27, 2021.

10.    Plaintiffs sought exemption from the Covid-19 vaccination policy due to their sincerely held religious beliefs, but were told that, even in cases where an exemption from the vaccine itself might be granted, the Executive Order and the joint guidance did not allow for any exemption from testing requirements.

11.    Plaintiffs have been subjected to lay-off, reassignment, or suspension without pay solely because, due to their sincere religious convictions, they did not submit to Covid-19 vaccination. Specifically,

       a.    Plaintiff Amanda Kate Humphreys was suspended without pay from her employment as a tenured teacher beginning September 11, 2021, and was terminated on December 2, 2021, and has been without pay from September 11, 2021 until now;

       b.    Plaintiff Latosha Bowlin was terminated from her employment and has been without pay from September 27, 2021 until now;

       c.    Plaintiff Nicole Potthast was suspended without pay from September 27, 2021 until February 7, 2022 when she was forced to choose either resignation from

employment or returning to a hostile work environment, and she has been without pay from September 27, 2021 until now;

12.    Plaintiffs have timely filed claims with the Equal Employment Opportunity Commission and either have received within the past 90 days, or expect to receive, their Right to Sue letters.

13.    Regular Covid testing was not required of employees who receive the Covid-19 vaccine.

14.    Plaintiffs were and are not required to vaccinate for any other infectious disease as a condition of their employment.

15.    The only disease for which Plaintiffs were required to test as a condition of their employment is tuberculosis. See, 77 Ill. Admin. Code 696.130.

16.    Plaintiffs object to being vaccinated or tested for Covid-19 as it violates their moral consciences.

17.    Plaintiffs were willing to abide by protections that have been demonstrated to protect against Covid-19, namely, self-monitoring for symptoms, wearing a mask when appropriate, voluntary reporting of potential symptoms, and reasonable testing requirements. These mechanisms provide a sufficient alternative to forced vaccination in violation of sincerely held religious beliefs.

18.    Being vaccinated or tested for Covid-19 violates the moral consciences of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to health care procedures which they, competent adults, do not believe are medically necessary.

19.    Being vaccinated for Covid-19 violates the moral consciences of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to health care

procedures which they reasonably believe relied, in whole or in part, for research and development on the use of stem cells or other materials obtained from aborted fetuses.

20.     Requiring only unvaccinated persons to submit to testing for Covid-19 violates the moral consciences of Plaintiffs because, *inter alia*, Plaintiffs hold sincere beliefs that prevent them from submitting to or participating in workplace procedures which arbitrarily discriminate between employees on the basis of health care choices made pursuant to freedom of conscience.

21.     The vaccines available to Plaintiffs at all relevant times herein had only had emergency use authorization for less than one year.[1]

22.     At all relevant times herein, the only available COVID-19 vaccines (Janssen/Johnson & Johnson), was authorized for use under the Emergency Use Authorization Statute. The Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, including Plaintiffs, be given the right to accept or refuse administration of the product.

23.     The recent FDA biologics license application (BLA) approval of the product COMIRNATY, COVID-19 Vaccine, mRNA, manufactured by BioNTech Manufacturing GmbH,[2] does not change the EUA status of the Pfizer-BioNTech COVID-19 Vaccine that has been available under EUA since December 23, 2020.[3] According to the EUA extension letter issued by the FDA to Pfizer on August 23, 2021, the Pfizer-BioNTech COVID-19 Vaccine and BioNTech's COMIRNATY, COVID-19 Vaccine, mRNA "are legally distinct" products.[4]

24.     Moreover, the now "approved" COMIRNATY vaccine cannot be distributed for

---

[1] https://www.dph.illinois.gov/covid19/vaccination-plan
[2] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA (Aug. 23, 2021), https://www.fda.gov/media/151710/download.
[3] EUA Extension Letter for Pfizer-BioNTech COVID-19 Vaccine (Aug. 23, 2021), https://www.fda.gov/media/150386/download.
[4] *Id*. at 3 n.10 (emphasis added).

use until BioNTech submits "final container samples of the product in final containers together with protocols showing results of all applicable tests" and BioNTech receives "a notification of release from the Director, Center for Biologics Evaluation and Research (CBER)."[5] Thus, it is not clear when (or if) any Illinois State employee will have access to the "approved" COMIRNATY vaccine, leaving all employees who may elect to receive the "Pfizer" vaccine pursuant to the mandatory vaccine policy to receive a dose of the current stock of Pfizer-BioNTech vaccine still being administered subject to EUA rules.

25.    On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. (See, Exhibit D, BioNTech Letter, United States Food and Drug Administration to BioNTech Manufacturing GmbH (Aug. 23, 2021); Exhibit E Pfizer Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021).)

26.    In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization for the previous Pfizer-BioNTech COVID-19 Vaccine. (Ex. E, Pfizer Letter at 1.) It also notes that the EUA approval was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

27.    The Pfizer Letter also makes clear that there is a scientific, manufacturing, and legally significant difference between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved Comirnaty Vaccine. (Pfizer Letter at 2 n.9.)

28.    Specifically, the FDA stated that although the COMIRNATY COVID-19 Vaccine as granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only subject to the EUA authorization. (Pfizer Letter at 2 n.9 ("In the August 23, 2021 revision, FDA

---

[5] BLA Approval Letter for COMIRNATY, COVID-19 Vaccine, mRNA, supra note 2 at 2.

clarified that, subsequent to the FDA approval of COMIRNATY (COVID19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)."

29.    Put simply, because at all relevant times herein, all three of the currently available COVID-19 vaccines were subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibited Defendants (or any other entity) from making the COVID-19 vaccines mandatory.

30.    All existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine remain under the sole authorization of the EUA. (Pfizer Letter at 2 n.9.)

31.    On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

32.    At all relevant time herein, there were no currently existing doses of COMIRNATY in the United States; and it was not being manufactured for production or distribution in the United States.

33.    In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

34.    Thus, the only currently available COVID-19 vaccines are subject solely to EUA

approval.

35.     The Emergency Use Authorization Fact Sheets for all three COVID- 19 vaccines state that it is the individual's right to refuse administration of the vaccine.

36.     Pfizer has acknowledged over 1200 serious to life-threatening known side effects from its "investigational Covid-19 vaccine."[6]

37.     According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, based on reported numbers, is 98.40%.[7]

38.     According to the CDC, the survival rate of all persons who have contracted Covid-19 nation-wide, when adjusted for unreported cases, is 99.36%.[8]

39.     According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, based on reported number, is 98.46%.[9]

40.     According to the IDPH, the survival rate of all persons who have contracted Covid-19 in Illinois, when adjusted for all unreported Covid cases, is 99.52%.[10]

41.     The suspension without pay, termination, discriminatory treatment, and subjection to a hostile work environment toward Plaintiffs has caused incalculable and irreparable harm to Plaintiffs and their families, namely, jeopardizing Plaintiffs' ability to provide for their families and avoid homelessness, lack of medical care, lack of food and shelter, disrupted education for children, financial hardship or ruin, and harms to physical, mental and emotional health.

42.     Several courts in Illinois and throughout the nation have already issued injunctive relief, including temporary restraining orders, to plaintiffs who are threatened with adverse

---

[6] https://phmpt.org/wp-content/uploads/2021/11/5.3.6-postmarketing-experience.pdf
[7] https://covid.cdc.gov/covid-data-tracker/#datatracker-home
[8] https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/burden.html (this CDC report adjusts the reporting based on asymptomatic cases which never get reported to government agencies.)
[9] https://www.dph.illinois.gov/covid19/covid19-statistics
[10] https://www.dph.illinois.gov/covid19/covid19-statistics

employment consequences because of their religious or conscience-based objections to COVID-19 vaccines: *Jane Doe et. al. v. Northshore University Health System*, Case No. 2021 CV 05683 (US Dist. Court, Northern District of Illinois) (granting TRO under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., and the Illinois Health Care Right of Conscience Act); *Velvet Darnell et. al. v. Quincy Physicians and Surgeons Clinic, S.C. and Blessing Corporate Services, Inc.*, Case No. 2021 MR 193 (18th Judicial Cir. Adams County, IL October 1, 2021) (granting TRO under Illinois Health Care Right of Conscience Act, and enjoining healthcare provider from taking adverse action against healthcare employees declining COVID-19 vaccination on religious and conscience grounds); *David Sambrano et. al. v. United Airlines, Inc.*, Case No. 4:21-01074-P (N.D. Texas. Oct. 18, 2021); *Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML, 2021 WL 4734404, *9 (N.D.N.Y. Sept. 14, 2021) (granting preliminary injunction against enforcement of New York's COVID-19 vaccine mandate on healthcare workers for failure to grant religious exemptions and noting that "Title VII does not demand mere neutrality with regard to religious practices . . . rather, it gives them favored treatment.' Thus, under certain circumstances, Title VII 'requires otherwise-neutral policies to give way to the need for an accommodation." (emphasis added)); *We The Patriots USA, Inc. v. v. Hochul*, No. 21-2179, dkt. 65 (2d Cir. Sept. 30, 2021) (issuing an injunction pending appeal against enforcement of New York's COVID-19 Vaccine Mandate for its failure to allow for religious accommodations); *Dahl v. Bd. of Trustees of W. Michigan Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021)(allowing the preliminary injunction to stand against a University's failure to accommodate student athletes with sincerely held religious objections to the COVID-19 vaccine mandate and noting that "The University put plaintiffs to the choice: get vaccinated or stop fully participating in intercollegiate sports. . . . By conditioning the privilege of playing sports on plaintiffs' willingness to abandon

their sincere religious beliefs, the University burdened their free exercise rights." (emphasis added)); *Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021) (granting temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body); *Bilyeu v. UT-Battelle, LLC*, No. 3:21-cv-352, 2021 WL 4859932, * (E.D. Tenn. Oct. 15, 2021) (granting TRO enjoining healthcare employer "from terminating or placing on indefinite unpaid leave any employee who has received a religious or medical accommodation").

43.    Plaintiffs seek declaratory relief under 28 U.S.C. §§2201-02, the First and Fourteenth Amendments of the United States Constitution, the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq. (as was in place at the time Plaintiffs were suspended or terminated), and the Declaratory Judgment Act, 735 ILCS 5/2-701.

44.    Plaintiffs seek damages under 42 U.S.C. § 2000e and the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq.

45.    Plaintiffs seek attorney's fees and costs under 42 U.S.C. § 1988, and the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1.

## JURISDICTION AND VENUE

46.    This action arises under the laws of the United States, specifically 21 U.S.C. §360bbb-3 and 42 U.S.C. § 2000e, *et seq*, the First and Fourteenth Amendments to the United States Constitution, and the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq..

47.    This Court has jurisdiction over this action, as amended herein, pursuant to 28 U.S.C. §§1331, 1343, and 1367.

48.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

49.    This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

50.    This Court is authorized to grant Plaintiffs' prayer for relief regarding damages, costs, and attorney's fees, pursuant to Rule 54 of the Federal Rules of Civil Procedure and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981a and §2000e, *et seq*., and the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq.

## RELEVANT LEGAL AUTHORITY

51.    As a matter of public policy, "No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford*, 141 U.S. 250, 251 (1891).

52.    As a matter of public policy, the right to bodily self-determination is recognized as constitutionally protected by the right to privacy. See, *Eisenstat v. Baird*, 405 U.S. 438, 453 (1972). See also, *Olmstead v. U.S.*, 277 US 438, 478 (1928) (Brandeis, J., dissenting) (the right to have one's private life protected from government interference is described as "the right to be let alone-the most comprehensive of rights and the right most valued by civilized man.")

53.    "It shall be an unlawful employment practice for an employer - (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his

employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. §2000e-2(a).

54.    "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate." 42 U.S.C. §2000e-5(g).

55.    "[S]ubject to the provisions of this section, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use." 21 U.S.C. §360bbb-3(a)(1) (the "Emergency Use Authorization Statute," or "EUA Statute.")

56.    As part of the explicit statutory conditions for an Emergency Use Authorization under the Emergency Use Authorization statute, the statute mandates that all individuals to whom the product approved for Emergency Use may be administered, be given the option to accept or refuse administration of the product. Specifically:

57.    "With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall for a person who carries out an activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the

public health, including the following . . . Appropriate conditions designed to ensure that individuals to whom the product is administered are informed — (I) that the Secretary has authorized the emergency us of the product; (II) of the significant known potential benefits and risks of such use, and of the extent to which such benefits are unknown; and (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.  21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III).

58.     The primary policy furthered by the Illinois Healthcare Right of Conscience Act, amended by Public Act 102-667, is "to respect and protect the right of conscience of all persons who refuse to obtain, receive or accept, or who are engaged in, the delivery of, arrangement for, or payment of health care services and medical care …" 745 ILCS 70/2.

59.     Under the HRCA's underlying definition, "health care" is defined as "any phase of patient care, including but not limited to, testing, diagnosis, prognosis, ancillary research, instructions, family planning, counselling, referrals, or any other advice in connection with the use or procurement of contraceptives and sterilization or abortion procedures, medication, or surgery or other care or treatment rendered by a physician or physicians, nurses, paraprofessionals or health care facility, intended for the physical, emotional and mental wellbeing of persons." 745 ILCS 70/3.

60.     "Conscience" is defined in the HRCA as "a sincerely held set of moral convictions arising from belief in and relation to God, or which, though not so derived, arises from a place in the life of its possessor parallel to that filled by God among adherents to religious faiths." *Id.*

61.     The HRCA as written is unambiguous, and unequivocally applies to protect individuals such as Plaintiffs from unlawful vaccination or testing mandates, or any forced

participation in medical procedures which violate their sincerely held religious beliefs. 745 ILCS 70/5, in particular, provides,

> Sec. 5. Discrimination. It shall be unlawful for **any** person, public or private institution, or public official to discriminate against **any** person in **any** manner, including but not limited to, licensing, hiring, promotion, transfer, staff appointment, hospital, managed care entity, or **any** other privileges, because of such person's conscientious refusal to receive, obtain, accept, perform, assist, counsel, suggest, recommend, refer or participate in **any** way in **any** particular form of health care services contrary to his or her conscience.

745 ILCS 70/5 (Source: P.A. 90-246, eff. 1-1-98.) (Emphasis added.)

62.     Plaintiffs have suffered and will suffer the loss of their constitutionally and statutorily guaranteed rights of free exercise of religion and equal protection, because of the Defendants' actions, including Public Act 102-667, as a result of Defendants' actions.

63.     Additionally, Plaintiffs are suffering and will suffer a chilling effect on the exercise of their rights as a result of the Defendants' actions.

64.     The enforcement of Defendants' Covid-19 vaccination or testing program, were actions taken under color of state law.

## COUNT I
## DEFENDANTS' COVID-19 VACCINATION OR TESTING PROGRAM VIOLATES TITLE VII, 42 U.S.C. § 2000e, et seq.

65.     The Plaintiffs restate and incorporate by reference Paragraphs 1 through 64 as though fully set forth herein.

66.     The Plaintiffs have a right to insist they not be compelled to be vaccinated or to submit to testing for Covid-19 unless the same be authorized by law.

67.    Defendants relied upon an executive order of the Governor as authority which compelled them to require Plaintiffs to be vaccinated or subject themselves to invasive testing for Covid-19.

68.    Title VII of the Civil Rights Act of 1964 prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs.

69.    Plaintiffs hold sincere religious beliefs that preclude them from receiving a Covid-19 vaccine.

70.    Plaintiffs informed Defendants of those beliefs and requested religious exemptions and reasonable accommodations from the vaccine mandate.

71.    Nonetheless, the Defendants, under color of law, adopted policies which mandated Plaintiffs to become vaccinated or submit to invasive testing.

72.    Defendants failed to provide Plaintiffs with religious exemptions and reasonable accommodations, thereby discriminating against Plaintiffs because of their religious beliefs.

73.    Defendants' failure to provide religious exemptions and accommodations has harmed and will continue to harm the Plaintiffs.

74.    Plaintiffs have filed and are filing charges with the EEOC complaining of these discriminatory actions. This Court may exercise its equity jurisdiction to grant preliminary injunctive relief to preserve the status quo pending completion of the EEOC's administrative process. See e.g., *Sheehan v. Purolator Courier Corp*., 676 F.2d 877, 884 (2d Cir. 1981); *Drew v. Liberty Mut. Ins. Co*., 480 F.2d 69, 74 (5th Cir. 1973); *Bailey v. Delta Air Lines, Inc*., 722 F.2d 942, 944-45 (1st Cir. 1983).

75.    An actual controversy exists between the parties in regard to the lawful authority of the Defendants to compel the Plaintiffs to submit to vaccination or testing for the COVID-19 to allegedly prevent the spread of an infectious disease.

76.    An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

Wherefore, Plaintiffs, LATOSHA BOWLIN, NICOLE POTTHAST, AMANDA KATE HUMPHREYS, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.

### COUNT II
### DEFENDANTS' COVID-19 VACCINATION OR TESTING PROGRAM VIOLATES THE EMERGENCY USE AUTHORIZATION ACT, 21 U.S.C. §360BBB-3, et seq.

77.    Plaintiffs restate and incorporate by reference Paragraphs 1 through 64 as though fully set forth herein.

78.    On information and belief, the existing vials of the EUA-approved Pfizer-BioNTech COVID-19 vaccine register in the millions, and anyone receiving any COVID-19 vaccine for the foreseeable future is guaranteed to receive the EUA-approved Pfizer-BioNTech COVID-19 Vaccine, not the fully approved COMIRNATY.

79.    There are no currently existing doses of COMIRNATY in the United States and it is not being manufactured for production or distribution in the United States at this time.

80.    In fact, the FDA Pfizer Letter plainly indicates that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age and older, there is no sufficient approved vaccine for distribution to the population." (Pfizer Letter at 6 n.12 (emphasis added).)

81.    Thus, the FDA has admitted and acknowledged that the current supply of the fully

approved COMIRNATY is not even available for the population in the United States, and thus issued the continued EUA authorization for the Pfizer-BioNTech Covid-19 Vaccine. (Id.).

82.     Indeed, in order for the FDA to have even continued the EUA for the Pfizer-BioNTech Covid-19 Vaccine, it was required to find that there were no alternatives available for the Pfizer-BioNTech vaccine. (See Pfizer Letter at 6 ("There is no adequate, approved, and available alternative to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (Emphasis added).)

83.     Thus, the only currently available COVID-19 vaccines are subject solely to EUA approval and therefore cannot be mandated for use.

84.     The Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine.

85.     By imposing a Mandatory COVID-19 Vaccination Policy on Plaintiffs and refusing to grant Plaintiffs their requested religious exemption from such mandatory vaccination, Defendants are denying Plaintiffs their right to accept or refuse administration of the three currently available COVID-19 vaccines, which are subject only to Emergency Use approval under the Emergency Use Authorization statute.

86.     Defendants are violating the provisions of the Emergency Use Authorization Statute.

87.     Defendants are denying Plaintiffs their statutory rights under the United States Code and infringing upon the explicit protections outlined in the Emergency Use Authorization Statute.

88.     The vaccinations have been authorized for less than one year.

89.     The long-term effects for this vaccine are unknown.

90.     Pfizer has acknowledged over 1200 known side effects from its "investigational Covid-19 vaccine."

91.     An actual controversy exists between the parties in regard to the lawful authority of the Defendants to compel the Plaintiffs to submit to health care services which are subject only to Emergency Use approval, in violation of Plaintiffs' moral conscience.

92.     An immediate and definitive determination is necessary to clarify the rights and interests of all parties affected.

93.     Defendants' Policy has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm by denying them their statutory right to accept or refuse administration of the three COVID-19 vaccines, which are subject only to Emergency Use under the Emergency Use Authorization statute.

94.     Plaintiffs have no adequate remedy at law to prevent the ongoing deprivation of their statutory rights under the Emergency Use Authorization statute to be given the right to accept or refuse administration of the COVID-19 vaccines, which are subject only to Emergency Use authorization under the Emergency Use Authorization statute.

Wherefore, Plaintiffs, LATOSHA BOWLIN, NICOLE POTTHAST, AMANDA KATE HUMPHREYS, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.

## COUNT III
## VIOLATION OF THE ILLINOIS HEALTHCARE RIGHT OF CONSCIENCE ACT
## 745 ILCS 70/1 et seq.

95.     Plaintiffs incorporate by reference paragraphs 1–64.

96.      The Healthcare Right of Conscience Act provides that individuals such as Plaintiffs may not be compelled to violate their religious convictions with regard to medical

procedures and treatment, as a condition of maintaining their employment.

97.    Defendants' Covid-19 mitigation measures, including exclusion, vaccination and testing requirements, forced Plaintiffs to choose between their sincerely held religious beliefs and their employment.

98.    Plaintiffs are entitled to recover damages as a result of Defendants' actions.

Wherefore, Plaintiffs, LATOSHA BOWLIN, NICOLE POTTHAST, AMANDA KATE HUMPHREYS, respectfully pray for relief against Defendants as set forth in their Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.    That this Court render a Declaratory Judgment declaring that Defendants' Mandatory COVID-19 Vaccination Policy, both on its face and as applied by Defendants, is and was illegal and unlawful under the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq., the Emergency Use Authorization statute, 21 U.S.C. §360bbb-3(e)(1)(A)(ii)(III) and Title VII, 42 U.S.C. § 2000e, et seq. and further declaring that:

a.    by terminating Plaintiffs from employment with Defendants or by threatening to so terminate or remove Plaintiffs from their current positions, Defendants have unlawfully denied Plaintiffs their statutory rights under the Emergency Use Authorization statute to refuse administration of a product granted only Emergency Use Authorization; and

b.    by terminating Plaintiffs from employment with Defendants or by threatening to so terminate or remove Plaintiffs from their current positions, Defendants have

unlawfully discriminated against Plaintiffs on account of their sincerely held religious objections to receiving or accepting one of the three COVID-19 vaccines in violation of Title VII; and

c.  by terminating Plaintiffs from employment with Defendants or by threatening to so terminate or remove Plaintiffs from their positions of employment, Defendants have unlawfully discriminated against Plaintiffs on account of their sincerely held religious beliefs in violation of 745 ILCS 70/1 et seq.

B.    That this Court award Plaintiffs actual damages in an amount to be proven at trial (but not less than $300,000 each, as provided by 42 U.S.C. §1981a(a) and (b)), including those for pain and suffering, that Plaintiffs sustained as a result of Defendants' discriminatory, unconscionable, and unlawful Mandatory COVID-19 Vaccination Policy.

C.    This this Court award Plaintiffs actual and treble damages in an amount to be proven at trial (but not less than $2,500 per incident per plaintiff, as provided by 745 ILCS 70/1 et seq), that Plaintiffs sustained as a result of Defendants' discriminatory, unconscionable, and unlawful Mandatory Covid-19 Vaccination Policy.

D.    That this Court adjudge, decree, and declare the right and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment.

E.    That this Court retain jurisdiction over the matter for purposes of enforcing the Court's order.

F.    That this Court award Plaintiffs the reasonable costs and expenses of this action, including reasonable attorneys' fees, as required by Title VII of the Civil Rights Act, and the Illinois Healthcare Right of Conscience Act, 745 ILCS 70/1 et seq.

G.    That this Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

By:    /s/ Bethany D. Hager
       Bethany D. Hager
       IL Bar Reg. No. 6301697
       Law Office of Bethany D. Hager
       Attorney for Plaintiffs
       917 North Walnut Street
       Danville, IL 61832
       Telephone: 217-497-1009
       bhagerlaw@gmail.com

## VERIFICATION

I, LATOSHA BOWLIN, am over the age of eighteen years and am an adult individual named as Plaintiff in the above-captioned matter. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 10, 2022          By:          /s/ Latosha Bowlin
                                                        LATOSHA BOWLIN

## VERIFICATION

I, NICOLE POTTHAST, am over the age of eighteen years and am an adult individual named as Plaintiff in the above-captioned matter. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 10, 2022          By:          /s/ Nicole Potthast
                                              NICOLE POTTHAST

## VERIFICATION

I, AMANDA KATE HUMPHREYS, am over the age of eighteen years and am an adult individual named as Plaintiff in the above-captioned matter. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of Illinois, that the foregoing statements are true and correct to the best of my knowledge.

Date: November 10, 2022          By:          /s/ Amanda Kate Humphreys

AMANDA KATE HUMPHREYS